B. F. SIMMS *v*. HORACE BEAN.

The term "money deposited," used in the 10th Section of the Act of the 28th March, 1840, does not include money deposited with an understanding that the person receiving it shall receive no commission for its care,—may mix it with his general funds, and employ it in his business,—but with the understanding that he shall give credit in account for its amount, and be ready to pay on demand.

APPEAL from the Sixth District Court of New Orleans.
    *Semmes & Edwards*, for plaintiff. *L. C. & G. B. Duncan*, for defendant.

SLIDELL, C. J. Interpreting the Act of 1840 as a whole, in connection with its title and with reference to pre-existing legislation, we deduce an intention of the Legislature to soften the ancient rigor of imprisonment for debt, but at the same time to maintain the remedy for the discouragement and punishment of fraud. It is against fraud the 10th Section is directed. The law is not prone to infer fraud, nor extend punishments and penalties; and this statute, highly severe in the consequences it inflicts, and penal in its character, should receive a strict judicial construction,—that is to say, it should not be extended to derelictions of duty not specially and clearly described and comprehended in it.

Interpreting the statute by this standard, we are unable to bring our minds

to a clear conviction that the defendant's case is covered by the 10th section, which in one of its clauses speaks of the debtor who "shall fail to pay over money received or collected for, or deposited with him for another," and this associates such acts in the same category with various other acts antecedently enumerated, any of which facts, says the section, "shall be held presumptive evidence of fraud."

The relation between the plaintiff and defendant, out of which the indebtedness arose for which he was arrested, was that of banker and customer. *Bean* was a banker, and kept a banking house, with which the plaintiff had an account and dealt in the usual manner, depositing money from time to time, which was carried to his credit in account, and checking upon *Bean* from time to time as he had occasion. These moneys were not specially deposited, and to be identically restored. (Civil Code, 2897.) They went into the mass of *Bean's* money, with the implied understanding, as we infer from *Bean's* vocation, that they might be used, and should be the basis of items in a debit and credit account on *Bean's* books. Bankers here, as everybody knows, do not and are not expected to keep each customer's fund separate, and not to use it; it goes into their general treasury; they are under no obligation not to employ it; and it is by employing it that they get their compensations for the expenses, trouble and risk of receiving and being responsible for the customer's money, since they receive no commissions; at least none was charged in this case. Persons exercising this vocation usually deal in exchanges, discounts and other financial transactions; and the customer, knowing this, knows the risks and vicissitudes to which a banker is exposed, and that the events of a week, or even a day, may involve him in embarrassment or ruin. To say that when such relations exist between the creditor and the debtor, the mere failure to pay the customer upon request, his balance of account, (which is all that is proved in this case,) is *per se* a fraud and within the purview of the statute, is going further than we are clear the legislature intended.

We therefore conclude that the term "money deposited," used in the statute, does not include money deposited with an understanding that the persons receiving it shall receive no commission for its care– may mix it with his general funds, and employ it in his business, but with the understanding that he shall give credit in account for its amount, and be ready to pay on demand.

This view of the case renders it unnecessary to enter into the criticism based upon the expression "deposited with him, *for another*."

Judgment affirmed with costs.